## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANITA POE-SMITH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : C.A. No. 16-660-LPS |
| EPIC HEALTH SERVICES, INC., EPIC | : |
| HEALTH SERVICES (DE), LLC, LEO A. | : |
| WEIGAND, and SHERRIE WEIGAND, | : |
| | : |
| Defendants. | : |

Patrick C. Gallagher, CURLEY, DODGE, & FUNK, LLC, Dover, DE

    Attorney for Plaintiff.

Lauren E.M. Russell, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE

Jacqueline R. Barrett and Phillip R. Combs, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Philadelphia, PA

    Attorneys for Defendants Epic Health Services, Inc. and Epic Health Services (DE), LLC.

## MEMORANDUM OPINION

March 8, 2017
Wilmington, Delaware

**STARK, U.S. District Judge:**

Presently before the Court is Defendant Epic Health Services, Inc.'s ("Epic") motion to dismiss. (D.I. 17)[1] For the following reasons, the Court will grant in part and deny in part the motion.[2]

## I.     BACKGROUND[3]

Anita Poe-Smith is employed by Epic as a home health aide. (*See* D.I. 16 at ¶ 6)  In February 2015, she was assigned by Epic to work for a client residing in the home of Leo and Sherrie Weigand. (*See id.* at ¶ 12) From February 2015 until May 2015, Mr. Weigand sexually harassed Ms. Poe-Smith by directing sexual innuendos and inappropriate comments toward her. (*See id.* at ¶¶ 13-14)  Ms. Poe-Smith alleges that Mr. Weigand's inappropriate behavior culminated on May 12, 2015, when Mr. Weigand physically assaulted her. (*See id.* at ¶¶ 25-29) According to Ms. Poe-Smith, Mr. Weigand "bought her a maid's costume while on vacation" and "told her she would have to model it." (*Id.* at ¶ 27) When Ms. Poe-Smith left the room, Mr. Weigand followed her, and "then pushed Ms. Poe-Smith with his open palms on her shoulder blades with full force," causing her to "f[a]ll forward, bending at the waist. He then smacked her on her buttocks." (*Id.* at ¶ 28)

Ms. Poe-Smith reported the incident to Epic on May 15, 2015. (*See id.* at ¶ 34)  Ms. Poe-

---

[1]In light of Epic Health Services, Inc.'s representation that it is the entity that employs Ms. Poe-Smith, the parties stipulated to dismiss all claims again Epic Health Services (DE), LLC without prejudice. (*See* D.I. 30)

[2]The Court will deny as moot Epic's motion to dismiss the original complaint (D.I. 10), in light of the filing of the amended complaint.

[3]The background is based on the facts alleged in Ms. Poe-Smith's amended complaint (*see* D.I. 16), and will be taken as true in evaluating Epic's motion to dismiss.

1

Smith admits that, before that date, she "did not complain to Epic about Mr. Weigand's harassment of her." (*Id.* at ¶ 20)  Nevertheless, Ms. Poe-Smith alleges that Epic should have been aware of Mr. Weigand's behavior based on his interactions with a supervisor at Epic, as well as the Weigands' history with other home healthcare services. (*See id.* at ¶¶ 18, 21-24)  In particular, "Mr. Weigand had been calling [Ms. Poe-Smith's supervisor] Meghan Williams on the telephone and sexually harassing her during the same time that Ms. Poe-Smith was working in Mr. Weigand's home." (*Id.* at ¶ 22)  Additionally, Mr. Weigand called Ms. Williams to ask whether he could give Ms. Poe-Smith gifts, such as a pedicure. (*See id.* at ¶ 38)

In the days after Ms. Poe-Smith reported Mr. Weigand's behavior, Epic offered her a new assignment. (*See id.* at ¶ 48)  Ms. Poe-Smith declined the offer because the job started at 7:30 a.m. and was an hour from her home. (*See id.*)  After that initial offer, Epic continued to give her "offers for assignments that were only two to three hours sporadically or serving as a back-up aide," but Epic also "assured Ms. Poe-Smith there were plenty of cases and plenty of new cases coming in every day." (*Id.* at ¶ 49)  On May 29, 2015, Epic offered Ms. Poe-Smith another full-time assignment, which she also turned down. (*See id.* at ¶ 50)  Then, in June 2015, Ms. Poe-Smith accepted a full-time assignment from Epic. (*See id.* at ¶ 51)

In March 2016, Ms. Poe-Smith submitted a Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC") against all four defendants – Epic Health Services, Inc., Epic Health Services (DE), LLC, Leo Weigand, and Sherrie Weigand – which the EEOC dismissed. (*See id.* at ¶¶ 8-9)  Following the dismissal, Ms. Poe-Smith brought the present action, alleging, among other things, that Epic discriminated against her on the basis of sex (Count I) and retaliated against her for reporting Mr. Weigand's sexual harassment (Count

2

II). *(See* D.I. 16 at ¶¶ 53-69) Epic moved to dismiss both counts. (D.I. 17) The Court heard oral argument on February 15, 2017. (D.I. 29)

## II. LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a morion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter School Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

3

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## III.   DISCUSSION

### A.   Sexual Harassment Claim

Ms. Poe-Smith alleges that Epic violated Title VII of the Civil Rights Act of 1964, which provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Ms. Poe-Smith also brings Delaware state law claims under the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. C. § 710 *et seq.* Because the DDEA is modeled on Title VII and contains virtually identical language, Delaware courts take "interpretive lead from federal decisions construing and applying Title VII." *Riner v. Nat'l Cash Register*, 434 A.2d 375, 376 (Del. 1981); *see also Miller v. State*, 2011 WL 1312286, at *7 (Del. Super. Ct. Apr. 6, 2011) (adopting federal standards for sex discrimination claims under DDEA). Accordingly, the Court will consider the federal and state law claims together. *See Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 154 n.7 (3d Cir. 2016).

Sexual harassment in the workplace "is a form of sex discrimination prohibited by Title VII." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). "A plaintiff may [] establish that an employer violated Title VII by proving that sexual harassment created a hostile work

4

environment." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). To succeed in a sexual harassment claim based on a hostile work environment, Ms. Poe-Smith must show that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same sex in that position; and (5) the existence of respondent superior liability. *See id.* In the context of a Title VII claim, respondeat superior means notice to the employer, rather than vicarious liability. *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 n.5 (3d Cir. 1999).

Epic moves to dismiss only on the basis that Ms. Poe-Smith has not averred facts sufficient to establish an inference of respondeat superior liability. Ms. Poe-Smith alleges that she was sexually harassed by Mr. Weigand, who was not employed by Epic. Although the Third Circuit has not addressed the question of an employer's liability for non-employee behavior, a number of district courts in this circuit, and other circuit courts, have determined that an employer is liable for the harassment of an employee by a non-employee when (1) the employer knows or should have known of the conduct and (2) fails to take immediate and appropriate corrective action. *See, e.g., Johnson-Harris v. AmQuip Cranes Rental, LLC*, 2015 WL 4113542, at *8 (E.D. Pa. July 8, 2015); *see also Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014); *Dunn v. Wash. Cty. Hosp.*, 429 F.3d 689, 691 (7th Cir. 2005); *Shatzer v. Rite Aid Corp.*, 2015 WL 4879450, at *6 (W.D. Pa. Aug. 14, 2015); *Armstead v. Exec. Cleaning & Supply, Inc.*, 2014 WL 4659935, at *13 (M.D. Pa. Sept. 17, 2014); *Mongelli v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 491 F. Supp. 2d 467, 477 (D. Del. 2007). The Court agrees that this is the correct standard to apply. This standard is consistent with the EEOC's regulations on sexual harassment,

5

which state that "[a]n employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action." 29 C.F.R. § 1604.11(e). Epic provides no persuasive reason for the Court adopt a different standard.

Even applying this standard, Epic contends that Ms. Poe-Smith's complaint must be dismissed with respect to Epic's alleged sex discrimination because the complaint shows that Epic took prompt and appropriate corrective action as soon as Ms. Poe-Smith reported Mr. Weigand's behavior. Ms. Poe-Smith had not previously complained to Epic about Mr. Weigand. (*See* D.I. 16 at ¶ 20) Epic's response to her May 2015 report was to immediately relieve her of the assignment and arrange a meeting between Epic managers and Ms. Poe-Smith to discuss the issue. (*See id.* at ¶ 36) Ms. Poe-Smith was also informed that Epic's Executive Director was going to meet with Mr. Weigand. (*See id.* at ¶ 42) Thus, Epic suggests that because it took immediate action and that action stopped the harassment, Ms. Poe-Smith cannot prevail on her Title VII claim. *See Kunin*, 175 F.3d at 294.

Epic may be liable, however, if Ms. Poe-Smith can prove that Epic was on earlier, constructive notice of the harassment. *See id.* If Epic was on constructive notice before May 15, 2015, then its corrective actions to remove Ms. Poe-Smith from the Weigand home, while appropriate, were not immediate. "An employer may [] have constructive notice of harassment if the harassment is 'so pervasive and open that a reasonable employer would have had to be aware of it.'" *Huston*, 568 F.3d at 105 n.4 (quoting *Kunin*, 175 F.3d at 294). This standard is meant to "strike the correct balance between protecting the rights of the employee and the employer by

6

faulting the employer for turning a blind eye to overt signs of harassment but not requiring it to attain a level of omniscience, in the absence of actual notice, about all misconduct that may occur in the workplace." *Kunin*, 175 F.3d at 294.

Ms. Poe-Smith contends that Epic should have known about Mr. Weigand's behavior before May 2015. She alleges in the complaint that her supervisor, Meghan Williams, "had herself dealt with Mr. Weigand on the telephone," with Mr. Weigand "calling Meghan Williams . . . and sexually harassing her during the same time that Ms. Poe-Smith was working in Mr. Weigand's home." (D.I. 16 at ¶¶ 21-22) According to Ms. Poe-Smith, when she reported the harassment to Epic, the supervisor "stated she was not surprised because Mr. Weigand had done the same thing with Meghan Williams over the phone." (*Id.* at ¶ 31) Ms. Poe-Smith alleges that during her meeting with Epic supervisors to discuss the harassment, "Meghan Williams said Mr. Weigand had been inappropriate with her over the phone." (*Id.* at ¶ 40) In addition, Ms. Poe-Smith alleges that Mr. Weigand called Ms. Williams to ask whether he was allowed to give gifts to Ms. Poe-Smith. (*See id.* at ¶ 38) Ms. Poe-Smith further alleges that the Weigands were unable to retain home healthcare workers and suggests that a background check would have uncovered Mr. Weigand's behavior, or at least the high turnover of health aides at his home. (*See id.* at ¶¶ 18, 24)

Accepting these allegations as true, the Court determines that it is plausible that Epic should have known – before Ms. Poe-Smith complained to her supervisors – that Mr. Weigand was harassing her. The complaint alleges repeated harassment of another Epic employee in a supervisory position, such that Epic was not surprised by Ms. Poe-Smith's report. Those calls to Ms. Williams, which the complaint alleges took place "during the same time that Ms. Poe-Smith

7

was working in Mr. Weigand's home," make it plausible that Epic should have known about Mr. Weigand's behavior prior to Ms. Poe-Smith's May 15, 2015 report. (*Id.* at ¶ 22) Given Mr. Weigand's repeated inappropriateness over the phone with Ms. Williams, it is plausible that Epic should have known that Mr. Weigand was engaging in similarly inappropriate behavior with Ms. Poe-Smith, who was physically present in his home. Additionally, Mr. Weigand's inquiry to Ms. Williams about giving gifts to Ms. Poe-Smith plausibly should have alerted Ms. Williams to the possibility that Mr. Weigand was behaving inappropriately toward Ms. Poe-Smith. At minimum, Ms. Poe-Smith plausibly contends that Epic should have further investigated the situation, in light of Ms. Williams' interactions with Mr. Weigand. *See Huston*, 568 F.3d at 105 ("[A]n employer may be directly liable . . . only if the employer was negligent in failing to discover the [] harassment."); *Zimmerman v. Cook Cty. Sheriff's Dep't*, 96 F.3d 1017, 1018 (7th Cir. 1996) ("The plaintiff must prove that the employer was negligent in having failed to discover and prevent [harassment].").

Accordingly, the Court will deny Epic's motion to dismiss Ms. Poe-Smith's sexual harassment claim.

## B. Retaliation Claim

Ms. Poe-Smith also claims that after she reported the sexual harassment, Epic retaliated against her by failing to give her a comparable assignment. Title VII prohibits an employer from discriminating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The DDEA includes a similar prohibition on retaliation. *See* 19 Del. C. § 711(f). To establish a retaliation claim under Title VII, a plaintiff must show that (1) she

8

engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) there was a causal connection between the protected activity and the employer's action. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007).

Epic moves to dismiss the retaliation claim on the ground that Ms. Poe-Smith does not allege a materially adverse action. A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Whether an action is materially adverse "often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* at 69.

Given the circumstances presented here, the Court determines that Ms. Poe-Smith has not plausibly pled that Epic took a materially adverse action against her. Ms. Poe-Smith reported the sexual harassment on May 15, 2015. (*See* D.I. 16 at ¶ 31) Within days, she was offered a different assignment, which she declined. (*See id.* at ¶ 48) Epic continued to offer her full-time and part-time assignments in the following weeks, which Ms. Poe-Smith also declined. (*See id.* at ¶¶ 49-50) But Epic continued to give her reassurances that "there were plenty of cases and plenty of new cases coming in every day." (*Id.* at ¶ 49) She accepted an assignment sometime in June 2015. (*See id.* at ¶ 51) The only reasonable inference to be drawn from these allegations is that Epic quickly began to search for an assignment that would be suitable for Ms. Poe-Smith, and continued to do so until one was found. Ms. Poe-Smith's allegation that Epic was retaliating against her is not plausible, given Epic's repeated attempts to secure a new assignment for her. Epic did not stop offering her work until she accepted a position – notably, within weeks of

9

reporting the harassment. (*See id.* at ¶¶ 31, 51) This conclusion is buttressed by the nature of Ms. Poe-Smith's work as a home health aide, in which the availability of assignments at any given time is dependent on the healthcare needs of Epic's clients. (*See* D.I. 26 at 5) Epic's repeated efforts – and ultimate success – to find acceptably comparable work for Ms. Poe-Smith render implausible her allegation that Epic acted in a materially adverse way.

Ms. Poe-Smith relies on a non-binding Fourth Circuit opinion to argue that Epic's actions left her "worse off" and were therefore retaliatory. *See EEOC v. Cromer Food Servs., Inc.*, 414 F. App'x 602 (4th Cir. 2011). The circumstances in *Cromer*, however, were markedly different from those alleged in the complaint here. The plaintiff in *Cromer* was offered a "take it or leave it" position that would have resulted in lower pay and more hours and would have interfered with his childcare obligations. *Id.* at 605. In contrast, Ms. Poe-Smith was offered multiple new assignments and continued to be offered new assignments until she accepted one. Although Ms. Poe-Smith suggests that the initial assignments offered were not sufficiently comparable and would have interfered with her family duties, the complaint demonstrates that Epic continued to present her with job opportunities until she found one that was acceptable for her circumstances. That it took several offers over a few weeks to find a suitable job for Ms. Poe-Smith does not lead to a plausible inference that Epic retaliated, especially in light of the type of work that Epic and Ms. Poe-Smith perform.

Accordingly, the Court will grant Epic's motion to dismiss the retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Epic's motion to dismiss the sexual harassment claim (Count I) and grant Epic's motion to dismiss the retaliation claim (Count II).

10